175 So. 825

STATE ex rel. CHESS & WYMOND CO. OF LOUISIANA v. GRACE.

STATE ex rel. LAZARUS v. SAME.

Nos. 34388, 34389.

June 21, 1937.

Rehearing Denied July 8, 1937.

George Wesley Smith, of Monroe, S. W. Plauche and N. F. Anderson, both of Lake Charles, and Thompson L. Clarke, of Monroe, for appellant Chess & Wymond Co.

Lazarus, Weil & Lazarus, of New Orleans, for appellant Eldon S. Lazarus.

Gaston L. Porterie, Atty. Gen., Lessley P. Gardiner, Asst. Atty. Gen., and Henry B. Curtis, Sp. Asst. to Atty. Gen., for appellee Lucille May Grace.

Harry P. Gamble, of New Orleans, Rownd & Tucker, of Hammond, and William W. Ogden and Rodney P. Woods, Jr., both of New Orleans, amicus curiæ.

Emmet Alpha, of New Orleans, amicus curiæ, for Property Owners Ass'n of New Orleans and others.

HIGGINS, Justice.

This is an appeal from a judgment holding that Act No. 183 of the Legislature of 1936, amending and re-enacting Act No. 161 of 1934 and Act No. 14 of the Fourth Extra Session of 1935, is unconstitutional, being violative of the provisions of article

4, section 13, of the Constitution of 1921. The crux of the case is whether or not the provisions of the statute are separable, for one part of the act is so obviously unconstitutional, its invalidity is conceded. However, relators contend that the provisions of the act are separable, i. e., that the unconstitutional part does not affect the valid part, and therefore the legal expression of legislative will should be enforced. Respondents argue that the purposes of the statute, as expressly declared therein to be the intention of the members of the Legislature, are so interwoven that the unconstitutional part, which is an important feature and integral part of the act, taints the entire statute and makes it void in toto.

The learned trial judge, in a well-written opinion, so clearly states the issues, analyzes them and supports his conclusions with pertinent authorities, we quote it in full with our approval:

"Relator Chess & Wymond Company of Louisiana, a corporation organized under the laws of the state of Kentucky, and domiciled in the city of Louisville, were the record owners of certain property situated in the parish of Morehouse. This property was sold on the 24th day of December, 1932, for the taxes of 1931, and adjudicated to the state of Louisiana. Relator avers that there were no taxes due to the state nor to any of its taxing subdivisions on the said property prior to the year 1931, and that the taxes for the year 1931, amounting to $255.75, were all of the actual taxes due to the state against said property at the time of the adjudication.

"Relator further avers that it has sought to redeem the said property under the provisions of Act No. 161 of 1934, as amended by Act No. 14 of the 4th Extraordinary Session of the Legislature of 1935, and by Act No. 183 of 1936, by paying the amount of actual taxes due the state in cash or by paying the same in five equal annual installments, the first installment to become due one year from the date of the redemption of said property, and one additional installment to become due each year thereafter for four consecutive years; and by paying the parish taxes for the year in which the said property was sold. That it presented its application to the register of the state land office to redeem the said land in conformity with said Act No. 161 of 1934, as amended, and requested the register to receive the said application and other documents attached, to file the same and to take such other action as might be necessary under the said act to perfect relator's redemption of its said property from the state, but that the register of the state land office has arbitrarily and contrary to law refused to receive said application and to issue the usual and proper certificate of redemption as required by law. Relator therefore prays that an alternative writ of mandamus issue herein directed to the register of the state land office, demanding her to receive relator's application to redeem said property in accordance with Act No. 161 of 1934, as amended by Act No. 14 of the 4th Extraordinary Session of 1935, and as amended by Act No. 183 of 1936, to file the same, and to take such other steps as may be necessary in order to effectuate a redemption of rela-tor's property from the tax sale to the state of Louisiana for the 1931 taxes under and by virtue of the said acts of the Legislature of the state of Louisiana, or to show cause to the contrary.

"The register of the state land office for answer to relator's petition admits the sale and adjudication of said property to the state for the taxes of 1931, but denies that it has the right at this time to redeem said property under the terms and provisions of Act No. 161 of 1934, as amended by Act No. 14 of the 4th Extraordinary Session of the Legislature of 1935, and as amended by Act No. 183 of 1936. The defendant admits that the relator had the right to redeem said property in accordance with the terms and provisions of Act No. 161 of 1934, as amended by Act No. 14 of the 4th Extraordinary Session of 1935 at any time between the effective date of Act No. 161 of 1934 and the 20th day after the adjournment of the Regular Session of 1936, that is, July 28, 1936, but respondent avers that at no time during the said period did relator attempt to redeem its said property in accordance with said acts, nor did it ever tender to respondent the amount required to redeem its said property.

"Respondent in her answer avers that her refusal to comply with relator's request was in accordance with an opinion rendered on December 11, 1936, by the Honorable Gaston L. Porterie, Attorney General of the state, who is her official legal advisor, and she attaches to her answer a copy of said opinion, and makes the same a part of her answer.

"She further avers that for the reasons set forth in the opinion of the Attorney General, Act No. 183 of 1936 is without any force or effect; that the purpose of said act was to provide for the cancellation of taxes which had accrued prior to the adjudication of property to the state or to one of its political subdivisions, as well as taxes accruing subsequently to such adjudication, and the only way in which the said Act No. 183 of 1936 could have had any constitutional validity or any effect whatsoever was by amendment to the Constitution of Louisiana of 1921, and particularly article 4, section 13 thereof; that accordingly the Legislature at the same session at which it enacted Act No. 183 of 1936, adopted Act No. 319, a joint resolution proposing an amendment to article 4, section 13, of the Constitution of Louisiana of 1921, relative to the release of real property for taxes due the state or due to any of its political subdivisions; that this proposed amendment to the Constitution was defeated by the voters at the General Election on November 3, 1936, and that the said amendment having failed to carry, Act No. 183 of 1936, is without effect and is unconstitutional, null and void and in violation of article 4, section 13, of the Constitution of the state, in that it is an attempt on the part of the Legislature to, extinguish or release, in whole or in part, the indebtedness, liability or obligations of corporations or individuals to the state or to the parish or municipal corporations thereof. Respondent especially pleads the unconstitutionality of Act No. 183 of 1936 and prays that relator's suit be dismissed at its cost, and that the alternative writ of mandamus issued herein be recalled, vacated and set aside.

"For the reasons above set forth, respondent denies that relator has any right to redeem its said property, except in accordance with the provisions of Act No. 175 of 1934, with the terms of which respondent avers relator has never complied or attempted to comply.

"On the trial of the case it was admitted:

"1. That the property of relator was sold to the state on the 24th day of December, 1932, for the taxes of 1931, and that the deed, regular and legal in form, was recorded in Morehouse parish on February 28, 1933.

"2. That relator secured from the register of the state land office two redemption certificates covering the two tracts of land as described in the deed, which certificates were signed on the 7th day of December by the register of the state land office, and that they were submitted to the state land office, who refused to receive and file the same, or to take such other steps as might be necessary to effectuate the redemption of the land described.

"3. That the amount named in the certificates referred to is the amount which would have been required to redeem the property under Act No. 183 of 1936, and that no taxes other than for the year 1931 were due on the property described in relator's petition and in the certificates.

"4. That the refusal of the register to receive and file said certificates was based upon the aforesaid opinion of the Attorney General of date December 11, 1936.

"5. That the Regular Session of the Louisiana Legislature for the year 1936 adjourned on July 8, 1936, and that the joint resolution embodied in Act No. 319 of 1936, proposing an amendment to section 13 of article 4 of the Constitution of 1921 was submitted to the electors of Louisiana at the general election held on November 3, 1936, and that the said proposed amendment was not ratified by the voters, but was defeated by a vote of 154,-162 votes 'Against' the said amendment to 129,337 votes 'For' the said amendment. (In making this last admission of fact counsel for the relator objected to its relevancy, which objection was overruled by the court).

"6. That the only offer of relator to redeem its said property was an offer made to redeem in accordance with Act No. 183 of 1936.

"7. That relator did not offer to redeem said property in accordance with the provisions of any other statute of the state.

"Counsel for the relator urged that the fact that relator did not offer to redeem its property in accordance with any other statute of the state was irrelevant, but admitted that if said fact is relevant, it is true that relator did not offer to redeem said property in accordance with any other statute.

"It was admitted also that the value of the property herein involved is in excess of $2,000.

"Mr. Carl Campbell, chief clerk in the office of the register of the state land office was called as a witness by relator and was asked the question as to the approximate number of redemptions from tax sales to the state of Louisiana made under Act No. 183 of 1936. Counsel for respondent objected to this question, but the court permitted it to be answered. According to the answer of Mr. Campbell, it appears that there were approximately two thousand redemptions under Act No. 183 of 1936; approximately ten thousand redemptions under Act No. 161 of 1934, and approximately twelve thousand redemptions under the provisions of Act No. 161 of 1934, as amended by Act No. 14 of the 4th Extraordinary Session of the Louisiana Legislature of 1935.

"The opinion of the Attorney General referred to is dated December 11, 1936, and reads as follows:

" 'You have asked me for an opinion as to whether Act No. 183 of 1936 is violative of article 4, section 13 of the Constitution of Louisiana of 1921, which reads:

" ' "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof; provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them."

" 'and in connection with your request you have furnished me with a copy of the decision of the Supreme Court of this state in the case of State of Louisiana ex rel. Tulane Homestead Association v. George Montgomery, State Tax Collector for City

of New Orleans, which opinion was rendered by a unanimous court on June 30, 1936. This decision affirmed the judgment of the lower court. It appears that the application for a rehearing, which was applied for in the case, was withdrawn on November 27, 1936. On account of the fact that the decision has so recently become final, it has not as yet been reported.[1]

" 'The Supreme Court in the Tulane Homestead Case, held that Act No. 161 of 1934 and Act No. 14 of the Fourth Extra Session of 1935 did not authorize the cancellation of taxes on property accruing prior to the adjudication. Likewise the Court of Appeal for the parish of Orleans, in State ex rel. Huggett, Judicial Sequestrator, et al. v. Montgomery, Tax Collector, decided on March 27, 1936, and reported 167 So. 147, held that Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extra Session of 1935, did not apply to taxes due prior to the adjudication to the state or city. This case was cited with approval by the Court of Appeal for the Second Circuit in State ex rel. McGregor et al. v. Diamond, Marshal, et al., 167 So. 760, decided April 30, 1936.

" 'Act No. 183 of 1936 (House Bill No. 103) was adopted by the Legislature at the Regular Session of 1936. The title of the act reads in part as follows: "An Act To amend and re-enact the title, Section 1, Section 4 and Section 2 of Act No. 161 of the Regular Session of 1934 as said title and Section 1 have been amended by Act No. 14 of the Fourth Extraordinary Session of 1935 entitled 'etc.' "

" 'Section 2 of Act No. 183 contains this provision:

" " " * * * Provided, further, that it is the intent and purpose of this Act that the issuance of any such certificate of redemption as provided for herein shall constitute a sufficient authorization to the Louisiana Tax Commission, and said Louisiana Tax Commission shall issue a certificate cancelling and annulling all taxes assessed and levied prior to and subsequent to the year for which the adjudication was made to the State or to any of its political subdivisions, and subsequent to the date of adjudication and up to and including the year in which the redemption was effected."

" 'It will be noted, therefore, that when the Legislature of 1936 enacted Act No. 183, the members were presumably aware of the judicial interpretations which had already been placed on Act No. 161 of 1934 and Act No. 14 of the Fourth Extra Session of 1935, and their only purpose was to authorize cancellations over and beyond what the courts had already held were authorized by the then existing laws. In other words, it is plain that the real purpose and intent of Act No. 183 of 1936 was to provide for the cancellation of taxes which had accrued prior to the adjudication as well as taxes accruing after the adjudication of property.

" 'But it is also plain that the Legislature recognized that without a constitutional amendment, Act No. 183 would be violative of article 4, section 13, of the Constitution of 1921. Accordingly, at the same session at which it enacted Act No.

---

[1] Now reported in 185 La. 777, 171 So. 28.

183, the Legislature adopted Act No. 319, a Joint Resolution proposing an amendment to section 13 of article 4 of the Constitution of Louisiana relative to the release of real property taxes due the state or due to any of its political subdivisions.

"'This proposed amendment to the Constitution was defeated by the voters at the general election on November 3, 1936.

"'It is impossible to separate the provisions of Act No. 183 and to hold that the Legislature intended the act to have one meaning if the constitutional amendment was adopted, and another and entirely different meaning if the amendment was defeated. It is plain that as to cancellations of taxes which had accrued prior to the adjudication of property, a constitutional amendment was required; and as the proposed constitutional amendment was defeated by the people, I am of the opinion that Act No. 183 of 1936 is without any effect, and no redemption can be made under said act.

"'I am so advising the Governor and other interested state officials.'

"The only issue before the court is one of law, and that is whether or not Act No. 183 of 1936 is effective and whether or not relator is entitled to avail itself of the provisions of this act.

"Act No. 183 of 1936 is an amendment and re-enactment of Act No. 161 of 1934 and Act No. 14 of the 4th Extra Session of 1935. Act No. 161 of 1934 was passed for the purpose of giving relief to all tax debtors throughout the state, except tax debtors in the city of New Orleans. Act No. 14 of the Extraordinary Session of 1935, amending Act No. 161 of 1934, was passed to afford the same relief to tax debtors in the parish of Orleans.

"The constitutionality of both of these acts was assailed, but in decisions which will be hereinafter referred to, the constitutionality of both of said acts was sustained.

"Act No. 161 of 1934 by its terms expired September 30, 1935. In 1935, the Legislature re-enacted and extended this act so as to make its provisions effective until twenty days after the adjournment of the next regular session of the Legislature in the year 1936.

"As stated, this amendatory law, that is, Act No. 14 of the 4th Extraordinary Session of 1935, extended the provisions of Act No. 161 of 1934 so as to bring within its provisions the parish of Orleans. The provisions of Act No. 161 of 1934, as amended by Act No. 14 of the 4th Extraordinary Session of 1935, were by Act No. 183 of 1936 extended up to 12 o'clock noon on the 30th of September, 1937.

"The constitutionality of Act No. 161 of 1934 was attacked in the case of Police Jury of Parish of Jefferson Davis v. Grace, 182 La. 64, 161 So. 22, and again in the case of State ex rel. Violet Trapping Company v. Grace, 182 La. 405, 162 So. 26. In both of these cases, the constitutionality of the act was sustained.

"In the case of State ex rel. Huggett v. Montgomery (La.App.) 167 So. 147, the same act, as amended by Act No. 14 of the 4th Extraordinary Session of 1935 was held to be constitutional. The validity and

constitutionality of the act as amended was also upheld in the case of State ex rel. Tulane Homestead Association v. Montgomery, 185 La. 777, 171 So. 28.

"The attack made upon the constitutionality of Act No. 161 of 1934, as amended by the Act of 1935, in the Huggett Case, supra, was that the act was repugnant to article 4, section 13 of the Constitution of 1921 in this: That the Legislature by the terms of said act attempted to permit the relinquishment and waiver by the state of pre-existing debts due the state in the form of taxes. The Court of Appeal for the parish of Orleans in that case held that the Legislature did not intend that preexisting debts in the form of taxes due prior to adjudication were to be waived by the state or its political subdivisions, from which the owner redeems his property.

"In the Huggett Case the plaintiff's contention was that under Act No. 161 of 1934, as amended by the Act of 1935, he should be permitted to redeem his property upon the payment only of the taxes for the year for which the sale was made, and that all taxes for the years intervening between the year for which the sale was made and the year in which the adjudication took place should be wiped out. This, the Court of Appeal held could not be done as the act conferred no such benefit. The inference was, however, that if the act had permitted the relinquishment of any taxes, except the taxes for the year for which the property was sold, the act would be repugnant to and violative of article 4, paragraph 13 of the Constitution of 1921.

"In the case of State ex rel. Tulane Homestead Association v. Montgomery, 185 La. 777, 171 So. 28, 30, our Supreme Court held Act No. 161 of 1934, as amended by Act No. 14 of the Fourth Extraordinary Session of 1935, to be constitutional for the reason that said act does not authorize the cancellation of taxes accruing before adjudication. In discussing Act No. 161 of 1934, and Act No. 14 of the Fourth Extraordinary Session of 1935, the Supreme Court said:

" 'Act No. 161 of 1934 authorized owners or persons interested in property adjudicated prior to the passage of the act "to redeem such adjudicated property from the State, or any of its political subdivisions, from the date of the passage of this Act, and up to and including September 30th, 1935, upon the payment in five equal annual installments of the amount of the actual taxes for which said lots or lands were adjudicated to the State, or any other of its political subdivisions.

" 'Act No. 14 of the Fourth Extra-Ordinary Session of the Legislature of 1935 amended the statute so as to extend the redemptive period "to twelve o'clock noon of the twentieth day after the regular session of the Legislature of 1936 shall have adjourned." The act was also amended so as to include the parish of Orleans which had been expressly excepted from the provisions of the act of 1934.

" 'Under the laws that existed before 1934, the owner whose property was sold for taxes, in order to redeem his property, would have had to pay all taxes up

to the date of redemption, including, of course, taxes accruing subsequent to the date of the adjudication of the property to the city or state. Section 62 of Act No. 170 of 1898, as amended by Act No. 72 of 1928; Act No. 85 of 1888; Gamet's Estate v. Lindner et al., 159 La. 658, 106 So. 22. The only authority for ordering the cancellation of such assessments and taxes is Act No. 161 of 1934, as amended, which the legislators were prompted to enact due to economic conditions, in order to relieve distressed property owners.

"'It is clear, and it is conceded, that, under these relief measures, state and city assessments for taxes becoming due subsequent to the years in which the property was adjudicated shall be canceled. The difficulty arises as to the applicability of the provisions of the statute to the assessment and taxes due for the years prior to the time of the adjudication to the state or city. There was no controversy as to the state taxes, because the state sells the property for the delinquent taxes the year after the taxes are due. In other words, state taxes are due on December 31st of each year and, before the end of the following year, the state tax sales are made. Therefore, there are no intervening taxes which can become due between the year for which the property was sold and the year in which it was sold. · The problem presented arises from the method of handling tax sales in the city of New Orleans. The city does not make its tax sales until just before the end of the three-year prescriptive period provided for in the Constitution. Article 19, § 19, Const.1921. In short, sales for city taxes which became

due in 1931 were not made until the end of the year of 1934. In the meantime, the city taxes for 1932, 1933, and 1934 had become due and payable, and the question, therefore, to be decided is whether or not the Legislature intended Act No. 161 of 1934, as amended by Act No. 14 of 1935, Fourth Extraordinary Session, to authorize the cancellation of these intervening city assessments and taxes. If so, would the act, as thus interpreted, be in violation of the provisions of article 4, § 13 of the Constitution of 1921, which provides that "The Legislature shall have no power to release or extinguish, or to. authorize the releasing or extinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof; provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them?" Counsel for interveners say it would, citing Succession of Popp, 146 La. 464, 83 So. 765, 26 A.L.R. 1446.

"'It is obvious that, since the Legislature adopted Act No. 161 of 1934 and specially excepted the parish of Orleans from the operations of its provisions, which therefore applied to the other parishes throughout the state, it did not take into consideration the rather unusual manner in which the city authorities sold property for delinquent taxes by allowing nearly three years to lapse, whereas the state only allowed one year. It appears that when the Legislature amended the act of 1934 by passing Act No. 14 of the Fourth Extra Session of 1935, the only

pertinent changes made were to extend the redemptive period of time and to include the parish of Orleans within its provisions. No special provision was made for the unusual condition which existed in the city of New Orleans concerning prior assessments and taxes due before the adjudication. It is obvious that this was an oversight for, if the Legislature intended to give the delinquent taxpayer of the city of New Orleans a greater benefit than the other delinquent taxpayers throughout the state, by authorizing the cancellation of taxes due both prior and subsequent to the adjudication, appropriate language to that effect would have been employed, especially, where the amending act was bringing the parish of Orleans under Act No. 161 of 1934, which was not designed for the particular delinquent tax problem present in the city of New Orleans, resulting from its more generous attitude towards the delinquent taxpayer. There is no such language to be found in the acts. We are confirmed in this view by the opinion of the district court and the Court of Appeal in the case of State ex rel. Huggett et al. v. Montgomery, supra, and certain expressions in the case of State ex rel. Violet Trapping Co. v. Grace, 182 La. 405, 162 So. 26. The fisc of a municipality should not be interfered with lightly and we shall not do so in interpreting these acts in the absence of a clear and unambiguous expression of legislative will to that effect, particularly where it would involve the acts in a serious constitutional question. Interstate Trust & Banking Co. v. Baker, 169 La. 766, 126 So. 54; Gamet's Estate v. Lindner et al., supra.

" 'Furthermore, laws are not presumed to be retrospective in their effect but prospective. Act No. 161 of 1934 was held to be constitutional in so far as assessments and taxes accruing after the adjudication were concerned in the case of State ex rel. McGregor et al. v. Diamond, Marshal, et al. (La.App.) 167 So. 760, citing with approval the Huggett Case, supra.

" 'We are of the opinion that it was never contemplated by the members of the Legislature and it was not their intention to deprive the city of New Orleans and its respective boards of the revenues which have accrued in the form of taxes prior to the adjudication of the property.'

"The contention made by respondent in this case is that the Legislature in 1936, by the terms of Act No. 183 of 1936, attempted to do the very thing the Supreme Court had held the Legislature could not have done and did not intend to do when it enacted Act No. 161 of 1934, and Act No. 14 of the Fourth Extraordinary Session of 1935, that is, authorize the cancellation of taxes accruing before the adjudication of property to the state.

"Respondent further contends that the members of the Legislature, knowing that Act No. 183 of 1936, as written, was not constitutional, in order to make it effective and constitutional, passed Senate Bill No. 106, which subsequently became Act No. 319 of 1936, which act reads as follows:

" 'Act No. 319.

" 'Senate Bill No. 106.

" 'A Joint Resolution

" 'Proposing an amendment to Section 13 of Article IV of the Constitution of

Louisiana, relative to the release of real property taxes due the State or due to any of its political subdivisions.

" 'Section 1. Be it resolved by the Legislature of Louisiana, two-thirds of the members elected to each House concurring, That there shall be submitted to the electors of the State of Louisiana for their approval or rejection, in the manner provided for by law, a proposition to amend the present Section 13 of Article IV of the Constitution of Louisiana, so that the same may be made to read as follows, to-wit:

" 'Section 13. That the Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof; provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them; and provided, further, that taxes due on immovable property adjudicated to the State and any of its political subdivisions, or either of them, may be extinguished and released, in whole or in part, by the Legislature for a period extending not beyond the year in which the property is redeemed. The provisions of Act 161 of the Regular Session of 1934, as amended by Act 14 of the Fourth Extraordinary Session of 1935, and by Act.... of 1936 (House Bill 103) are ratified, affirmed and approved, and the provisions of Act....of 1936 (House Bill 103) shall be retroactive so as to apply to and affect any redemptions made under any of the aforesaid acts since the effective date of Act 161 of 1934 to the same extent as if said redemptions had been made under the Constitutional amendment and said Act....of 1936 (House Bill 103).

" 'Section 2. That said proposed amendment be so submitted to said electors at the next election for Representatives in Congress, to be held in Louisiana on the first Tuesday next following the first Monday of November, 1936.

" 'Section 3. That on the official ballot to be used at said election there shall be printed:

" 'For the proposed amendment to Section 13 of Article IV of the Constitution of Louisiana, relative to release of taxes on real property due the State, or due to any of its political subdivisions.
and also:

" 'Against the proposed amendment to Section 13 of Article IV of the Constitution of Louisiana, relative to release of taxes on real property due the State, or due to any of its political subdivisions.
" 'and each elector voting on said proposition for so amending said Constitution, shall indicate his vote relative thereto, as provided by the general election laws of the State of Louisiana.

" 'Adopted at the Regular Session of the Legislature of Louisiana for the year 1936.'

"This proposed amendment to the Constitution, upon being submitted to the people for ratification and adoption, was defeated.

"It is therefore the contention of respondent that the refusal of the people to

adopt this amendment (Amendment No. 15), left Act No. 183 of 1936 inoperative and without any force and effect whatsoever.

■ "Respondent claims that notwithstanding the fact that she permitted certain redemptions under said act prior to the date of the receipt of the Attorney General's opinion holding said act to be inoperative, this has no bearing whatsoever upon the validity and constitutionality of the act. With this contention, the court agrees. However, the argument is made by learned counsel for relator that the register's interpretation of the act as shown by the redemptions permitted thereunder prior to the receipt of the Attorney General's opinion should have some weight in determining the question of its validity, citing the case of State ex rel. Guillot v. Central Bank & Trust Company, 143 La. 1053, 79 So. 857; State ex rel. Payne v. Exchange Bank of Natchitoches, 147 La. 25, at pages 29, 30, 84 So. 481; St. Bernard Syndicate v. Grace et al., 169 La. 666, at page 674, 125 So. 848; State v. Comptoir National D'Escompte de Paris, 51 La.Ann. 1272, 26 So. 91; State v. Southern Pacific Company, 137 La. 435, 68 So. 819, L.R.A. 1915F, 1140.

"Learned counsel for relator, as we understand it, concede that that portion of section 2 of said act providing that the issuance of a certificate of redemption shall constitute sufficient authorization to the Louisiana Tax Commission to issue a certificate canceling and annulling all taxes assessed and levied prior to and subsequent to the year for which the adjudication was made to the state or to any of its political subdivisions, etc.' is unconstitutional, but they contend that in determining the validity and constitutionality of the remainder of Act No. 183 of 1936, the court has the right to and should disregard all of that portion of section 2 following the word 'provided', for the reason that this case does not involve a construction of said proviso, and for the additional reason that the act is complete within itself down to the word 'provided' in section 2, and a practical reenactment of previous acts, the constitutionality of which have already been approved by the Supreme Court. In other words that all of that part of section 2 following the word 'provided' is wholly irrelevant to and disconnected with the case at bar and should not be considered.

"Learned counsel remind the court of the well established principle of law that if any part of a legislative enactment is unconstitutional that cannot affect the constitutionality of the remainder of the act, provided the part of the act which remains is complete in itself and capable of being executed in accordance with the legislative intent, wholly independent of that which is rejected, and provided that the provision of the act that is rejected is not so interwoven with or dependent upon the other provisions of the act that it could not be presumed that the Legislature would have passed the one without the other, citing the case of Moore v. City of New Orleans, 32 La.Ann. 726; Cooley Const.Lim. 178; Saunders v. City of Opelousas, 159 La. 527, 105 So. 608; City of Alexandria v. Hall, 171 La. 595, 131 So. 722; Metropolitan Life Insurance Com-

pany v. Morris, 181 La. 277, 159 So. 388; State ex rel. Garland v. Guillory, 184 La. 329, 166 So. 94.

"Learned counsel for relator, claiming that Act No. 183 of 1936 is complete within itself, workable and enforceable without the proviso contained in section 2 urged that it did not have to be submitted to the people of the state for ratification or rejection; to the contrary, they point out that there is no provision in the law of the state of Louisiana providing for a referendum of acts of the Legislature to the people and that therefore if it was intended by Act No. 319 of 1936 that this act be submitted to the people, such submission was wholly unauthorized and unnecessary.

"It is obvious that the reason for the submission to the people for ratification or rejection of Act No. 319 of 1936 was that Act No. 183 of 1936 on its face was contrary to the decisions of the Supreme Court in the case of State ex rel. Tulane Homestead Association v. Montgomery, 185 La. 777, 171 So. 28, and the decision of the Court of Appeal for the parish of Orleans in the case of State ex rel. Huggett v. Montgomery, 167 So. 147, and in violation of Article 4, paragraph 13 of the Constitution of 1921. In other words, Act No. 319 of 1936 was intended as an amendment to article 4, paragraph 13 of the Constitution of 1921, the effect of which amendment would have been to give the Legislature power 'to release or extinguish, or to authorize the releasing or extinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof,' as it had declared its intention to do in Act No. 183 of 1936.

"There can be no doubt that a statute may be valid in part and invalid in part, and that the invalid part may be disregarded altogether and the other part constitute a valid statute if the two parts are not so intimately connected as to raise a presumption that the Legislature could not have enacted the one without the other.

"The question that presents itself in this case is this: Is it possible to separate all of section 1 of the act from all of section two (2) following the word 'provided', and thereby accomplish the legislative intent? In other words, is it possible to hold that the Legislature intended that the act would have one meaning if the proposed constitutional amendment referred to was adopted and another and entirely different meaning if the amendment was defeated? The court has very carefully considered this question, and has reached the conclusion that it is impossible to separate these provisions of Act No. 183 of 1936. This conclusion is reached by reason of the fact that the lawmakers have expressly indicated their intent and purpose in passing this act which is that tax debtors throughout the state as a whole may redeem their property by paying taxes for the year in which they are delinquent and receive therefor a certificate canceling and annuling all taxes assessed and levied prior to the year for which the adjudication was made to the state or any of its political subdivisions.

"While, as stated by learned counsel for relator, this proviso in section 2 of Act No. 183 of 1936 may have been added to House Bill No. 103 as originally drawn for the special benefit of tax debtors in the city of New Orleans, there is nothing contained in the act limiting its effect, if indeed any such limitation could have been validly placed in the Act. The act is in the opinion of the court uniform in its application, and if effective, it is as effective in one part of the state as in another.

"Relator does not seek the cancellation of any taxes due against its property prior to adjudication.

"It does, however, seek relief under an act which it is claimed confers the right upon a tax debtor to demand the cancellation of all taxes that might have been due prior to the adjudication by reason of which, it is claimed, the whole act is unconstitutional.

"A careful reading of the act as a whole convinces me that the Legislature, in enacting Act No. 183 of 1936 intended not only to extend the time in which tax debtors could redeem their property under the terms of the act, but to cancel all taxes which had accrued prior to the tax adjudication, as well as subsequently. The act contains no provision that the invalidity or unconstitutionality of one part thereof shall not affect the validity of the other parts. This failure of the Legislature to separate the provisions of the act suggests the thought that it was intended to be enforced as well as construed as a whole.

"Learned counsel for relator contend that the mere fact that the public fisc of the city of New Orleans will suffer by the application and enforcement of the act should not be considered as the law applied generally will work to the greatest good of the greatest number of people. While this may be true, it would seem that by reason of its far reaching effect and particularly its effect upon the fisc of the city of New Orleans the Legislature sought by passing Act No. 319 of 1936 and submitting it as a constitutional amendment to ascertain the will of the people. It is a matter of common knowledge that had it not been for the large number of votes cast in the city of New Orleans against the proposed amendment it would have been adopted. It would therefore seem that the effect of the act upon the public fisc of that city was a matter of the greatest concern to the people of New Orleans, so great in fact, that the amendment was overwhelmingly defeated in that city.

"The all important question in this case. is whether the provisions of Act No. 183 of 1936 are separable, and whether conceding the unconstitutionality of the proviso contained in section 2, the remainder of the act should stand.

"In Ruling Case Law, vol. 6, par. 125, p. 127 we find the following statement:

"'125. Invalidity of Essential Part of Statute.....The Courts have frequently had occasion to decide that unconstitutional portions of general statutes are of sufficient importance to render the entire act

unconstitutional. It may therefore be stated, as an additional test for determining whether the provisions of a statute are severable, that whenever the ruling feature of a law, or an essential part from which the remaining portions take their cast, is unconstitutional, the act must fall as a whole. This test is distinct from that which demonstrates the invalidity of an entire statute whenever its inducement is unconstitutional. It is clear that the invalidity of one section of a statute which is in material relation to its other portions so as to modify, restrict, or extend its application, will cause the failure of such other portions also. Frequently a single part of an act may be of so great importance that, although in itself it may not be an inducing cause for the enactment of the legislation, its invalidity may render the whole act void.'

■ "The court is not unmindful of the general rule of law that within certain limits, the courts, in order to uphold a statute, may so interpret the statute as to restrict its application to the legitimate portion thereof, but this is true only where the statute itself does not indicate a different intention on the part of the lawmakers. ·

"The general purpose of the act here involved was to facilitate the tax debtors of this state who during the recent financial depression lost their property at tax sale. By the terms of this act and previous acts it was provided how this could be done and when it must be done.

"When the first of these acts was assailed the all important question before the court was the intention of the Legislature in enacting the statute, that is whether the Legislature intended to authorize the cancellation of taxes accruing before adjudication. The Supreme Court answered the question in the negative.

"However, notwithstanding the previous interpretation placed upon Act No. 161 of 1934 by the Appellate Courts of this state, the Legislature in re-enacting this beneficent statute deliberately and purposely declared in the act itself that 'it is the intent and purpose of this act that the issuance of any such certificate of redemption as provided for herein shall constitute a sufficient authorization of the Louisiana Tax Commission and said Louisiana Tax Commission shall issue a certificate canceling and annulling all taxes assessed and levied prior to and subsequent to the year for which the adjudication was made.'

"In view of this declaration of legislative intent contained in section 2 of the act, the court is unable to segregate this part of section 2 from the remainder of the act. It is an integral part of the whole act and must be so considered.

"As the legislative intent as expressed in the act itself is contrary to, violative of and repugnant to article 4, section 13 of the Constitution of 1921, the demands of relator must be denied and rejected.

"It is therefore ordered that the alternative writ of mandamus herein issued be recalled and that this suit be dismissed at relator's cost."

■ In order to consider certain contentions made before this court, it is nec-

essary to supplement the opinion of our learned brother below. For convenience and ready reference, we classify the different types or groups of delinquent taxes and delinquent tax debtors or distressed property owners, as follows: (1) Those who owe only the taxes for the year the property was adjudicated, hereinafter referred to as the subsequent type; (2) those who owe taxes for the year the property was adjudicated and also taxes due prior to the adjudication, hereinafter called the prior type; and (3) those who owe taxes for the year for which the property was adjudicated, the taxes due prior to the date of the adjudication, and the taxes which would have been assessed and become due after the adjudication, if the property had not been adjudicated for delinquent taxes and had remained on the tax rolls, hereinafter referred to as the prior and subsequent type.

It is argued that the opinion of the trial judge is fatally defective, because, as the Legislature was willing to grant relief from both prior and subsequent delinquent taxes, it is manifest that it was willing to grant relief from subsequent delinquent taxes, which it had the constitutional right to waive. In short, as the Legislature was willing to grant the whole, it certainly was willing to grant a part thereof. This is a subtle and plausible argument but it is not sound. The fallacy in it lies in the assumption of a false predicate, i. e., that there was only one class of distressed parties before the Legislature, when there were three types or classes. Therefore, this contention cannot stand the test of an analysis, for it by no means logically and reasonably follows that, if the Legislature attempted to relieve both prior and subsequent types or classes of delinquent tax distressed property owners, it would have been willing to further relieve only the subsequent type, even though it was impossible to also help the prior type. The Legislature might just as well have had in mind that it would grant relief to all three types or to neither of them. Can it be fairly said that the Legislature intended the statute to have two separate and distinct meanings, one, if the people failed to ratify the provisions of the joint resolution (Act No. 319 of 1936), and another, if the people ratified the proposed constitutional amendment which was practically embodied in Act No. 183 of 1936? It is obvious that when the members of the Legislature enacted Act No. 183 of 1936, they intended to relieve distressed delinquent tax property owners generally. They had before them Act No. 161 of 1934, which was subsequently amended by Act No. 14 of the 4th Extra Session of 1935. Under the provisions of those statutes, between the effective date of Act No. 161 and the final effective date of Act No. 14, a period of two years, thousands of delinquent taxpayers had availed themselves of the generosity of the lawmakers and had redeemed their respective property and had been benefited by the cancellation of claims for taxes which would have accrued on their properties subsequent to the adjudication, if they had not been sold to the state or its subdivisions. They also knew that this court and the Courts of Appeal had held that taxes accruing prior to the adjudica-

tions were not affected by the redemptions under Act No. 161 of 1934, as amended by Act No. 14 of 1935, 4th Ex.Sess., and, therefore, that there was a large number of distressed property owners who had not been benefited by the provisions of the aforesaid statutes.

Due to the fact that the subsequent type delinquent distressed property owners had already had two years to redeem their property, upon the payment of one year's taxes in cash or installments, and thousands had availed themselves of that relief, it is fair to say that the prior type distressed delinquent property owners were in the majority for they never had an opportunity to redeem their property.

When House Bill 103 (Act No. 183 of 1936) was introduced, there were the three above-mentioned classes of property owners who sought relief from the Legislature, i. e.: (1) The subsequent type, (2) the prior type, and (3) the prior and subsequent type. Surely, the latter two classes embraced a larger number of distressed property owners than the first class, who had been redeeming their property for two years. When House Bill 103 came up for third reading and final passage, since it only contemplated relief to the subsequent type distressed owners, those interested in both the prior as well as the prior and subsequent type distressed owners (types 2 and 3), amended the bill so as to make it cover prior taxes, with the result that this would grant relief to all three classes or types of distressed owners. Since those who were responsible for placing the amendment in House Bill 103 to cover prior taxes had enough influence or voting power to make it part of the statute, notwithstanding its obvious and patent unconstitutionality, it would be unreasonable to say that, if the proponents of House Bill No. 103, in its original form, had not yielded to the amendment, they could have passed it over the opposition of those who were seeking relief for the prior type and the prior and subsequent type of distressed property owners.

In view of the language of the statute itself and the circumstances surrounding its passage, it would be unreasonable to hold that the lawmakers intended to benefit one class of delinquent tax payers even though it was powerless to grant the same advantages to the other classes. While it is true that the Legislature had the constitutional right to continue the benefits and relief to the subsequent type of distressed property owners at the expense of the other taxpayers of the state, as it had done for two years prior to the passage of Act No. 183 of 1936, in view of the language of the statute and the history of the legislation, it cannot be logically or fairly stated that the Legislature intended to continue to grant further relief and benefits solely and only to one type or class, while the greater number and more distressed property owners, because of constitutional inhibitions, were beyond legislative relief. If the members of the Legislature had intended that the constitutional part of the act should stand regardless of the unconstitutional part, there were two very simple ways of accomplishing that result: (1) By passing two separate acts, one dealing with prior taxes and the other with subsequent taxes; (2) they could have placed the

usual clause prevalent in modern legislation to the effect that if any part of the law is declared to be unconstitutional, that its invalidity would not affect the remaining constitutional expression of legislative will. The members of the Legislature failed to use either one of these safeguards. On the contrary, the members of the Legislature intentionally and deliberately stated that it was the intent and purpose of the act to cancel and annul "all taxes assessed and levied prior to and subsequent to the year for which the adjudication was made. * * *" In addition to this, the members of the Legislature took cognizance of the decisions of the Courts of Appeal and this court holding that the Legislature was powerless, in view of the constitutional inhibition, to cancel accrued or prior taxes. This is reflected by the fact that the Legislature proposed a constitutional amendment in a joint resolution—Act No. 319 of 1936 —for the purpose of eliminating the constitutional restriction on its power. The members of the Legislature interested in relieving the subsequent type of distressed property owners, knew, when the amendment covering prior taxes was inserted in House Bill 103, which up to then covered only subsequent taxes, that the constitutionality of the whole statute was obviously jeopardized, unless there was some expression by them that, if the part dealing with prior taxes was declared unconstitutional, it was their wish that the part dealing with subsequent taxes should stand. But again, for the purpose of emphasis, we point out that no precaution or safeguard to obtain this result was employed. Surely, this was no mere oversight or inadvertence

for, on the contrary, we find in Act No. 319 of 1936, the joint resolution proposing the constitutional amendment, that the same legislators who passed Act No. 183 of 1936, tied this whole subject-matter together by express and specific reference, as follows: "The provisions of Act No. 161 of the Regular Session of 1934, as amended by Act No. 14 of the Fourth Extraordinary Session of 1935, and by Act ..... of 1936 (House Bill 103) are ratified, affirmed and approved, and the provisions of Act ..... of 1936 (House Bill 103) shall be retroactive so as to apply to and affect any redemptions made under any of the aforesaid acts since the effective date of Act 161 of 1934 to the same extent as if said redemptions had been made under the Constitutional amendment and said Act ..... of 1936 (House Bill 103)."

It was, therefore, the unquestionably and expressly declared intention and purpose of the legislators to grant relief to distressed property owners from taxes accruing prior to the adjudication and taxes accruing after the adjudication. It is apparent that they intended, if they could not grant relief to all three types of distressed property owners, that since they had already granted the subsequent type of distressed property owners two years within which to redeem their property, then all relief should be withheld, because the members of the Legislature did not wish to further favor one class of property owners over the other but to treat them all alike, i. e., relief for all or relief for none. We do not find anywhere the slightest indication of a legislative intent to help one type independent and exclusive of the

other types. It would be pure conjecture on our part, equivalent to judicial legislating, to hold that the Legislature intended the provisions of this act to be separable.

In the cases of Etchison Drilling Co. v. Flournoy, Tax Collector, 131 La. 442, 59 So. 867, and Calcasieu Long Leaf Lumber Co. et al. v. Reid, Tax Collector, et al., 146 La. 77, 78, 83 So. 384, the court was presented with two cases involving the constitutionality of a statute. Mining pursuits were exempt from a license tax by article 229 of the Constitution of 1898. The General Assembly of 1910, in regular session, passed Act No. 196, levying a license tax upon forestry and mining businesses. In the body of the act, the tax was graduated and at the end thereof was a clause that the statute would not go into effect until the proposed constitutional amendment in the form of a joint resolution, passed by the same Legislature, was adopted. The proposed constitutional amendment was ratified by the people and became effective in November, 1910. The tax collector attempted to enforce the payment of the license tax provided for in Act No. 196 of 1910 and the constitutional amendment against an oil and gas drilling company in the first case, and a company engaged in the forestry business in the second case. In the former, the Supreme Court held that since the act was passed by the Legislature at a time when there was a constitutional prohibition against such a statute, that the act was unconstitutional in so far as mining pursuits were concerned.

In the latter case, the argument was made by the lumber company that since a part of the statute was unconstitutional when it was passed, in that it levied a license tax upon mining pursuits contrary to the provisions of article 229 of the Constitution. of 1898, that the whole statute was unconstitutional, because it was inseparable. In holding that the act was not separable and the unconstitutional part nullified the whole act, the court said:

"Of course, there are cases where a statute may be valid in one respect and invalid in another. But they are cases where the two parts of the law are so distinct and separable that the court can conclude that the intention of the Legislature was that the valid provisions of the law should be enforced, without regard for the provisions declared invalid. If the objectionable and the unobjectionable provisions of a statute are not distinct and separable, to declare the one provision invalid and the other enforceable would be to substitute for the law as enacted one which the Legislature might not have been willing to enact. The first section of this statute, in one sentence, and without distinction, levies the license tax upon persons, etc., 'pursuing the business of severing from the soil timber and minerals.' In subsequent sections, necessarily, the tax on each occupation is graded separately. But the evidence in the record shows that the revenue to be collected from those engaged in mining pursuits was at least as much as the revenue to be collected on the business of severing timber from the soil. The fact that the Legislature would not impose the tax upon those engaged in the business of severing timber from the soil until it could be also imposed validly upon those engaged in mining pur-

suits convinces us that the Legislature did not intend to levy the tax upon the business of severing timber from the soil, independently and without regard to the levy of the tax upon mining pursuits.

"The judgment appealed from is affirmed." 146 La. 77, 80, 83 So. 384, 385. See, also, State v. Clinton, 28 La.Ann. 201.

The above reasoning is applicable here—for this court will not presume that the Legislature would favor one class or group over the other equally deserving classes or groups with reference to relief, just as the Legislature did not intend to make the tax burden of the forestry business greater than that of the mining business when both types of business were in such similar positions that they should have been treated alike. There the Legislature in effect said, while we have the right to tax forestry businesses, we will not exercise that right unless we are granted the right to tax mining business, because both should be treated the same. Here the Legislature in effect said, we will not exercise our constitutional right to further help the less embarrassed subsequent type tax delinquent property owners, unless we are granted the right to help the more embarrassed and distressed ones, i. e., the prior and the prior and subsequent types. They apparently had in mind that their positions were so similar that they would not prefer one over the other but treated both of them alike.

Paraphrasing the language of the Calcasieu Long Leaf Lumber Co., etc., v. Reid, Tax Collector, Case, it was the expressed intention and purpose of the Legislature to grant relief in the form of a

waiver and cancellation from taxes accruing prior to adjudication as well as taxes which would have accrued after adjudication, if the property had not been sold to the state or its subdivisions and relief would not be granted to either, one of these distressed classes or types of property owners independent of the other.

It is our opinion that the above cited cases present a situation where this court declared unconstitutional the provisions of a legislative act under circumstances and language more favorable to its constitutionality than the facts and language in the instant case are with reference to the constitutionality of Act No. 183 of 1936. There the constitutional amendment passed —here it failed. There is less similarity as far as classification is concerned between mining businesses and forestry businesses than there is between distressed property owners who owe prior taxes and those who owe subsequent taxes. The only difference is the prior classes are in greater need of help than the other. The history of the passage of the instant act and the provisions thereof more definitely and strongly show that the act was considered as a unit or single piece of legislation, standing or falling as a whole than appeared from the history and the provisions of the Act No. 196 of 1910, which was declared unconstitutional in the two above cases.

It is our opinion that Act No. 183 of the Legislature of 1936 is unconstitutional, being in violation of article 4, section 13, of the Constitution of 1921, and therefore null and void in its entirety, because its provisions are inseparable.

For the reasons assigned, the judgment appealed from is affirmed at relator's costs.

ODOM and PONDER, JJ., dissent.

O'NIELL, C. J., is of the opinion that, even if it should be conceded, for the sake of argument, that Act No. 183 of 1936 is unconstitutional in so far as it provides for the canceling of taxes that had accrued previous to the year for the taxes of which the property was sold to the state, the statute is constitutional in so far as it allows a taxpayer to redeem his property without having to pay the assessments made subsequent to the tax sale of the property to the state—these subsequent assessments being—as the court has said—only "bookkeeping entries."

175 So. 838