ON REHEARING
A rehearing was granted herein to give further consideration to certain questions stressed in the application for rehearing on behalf of defendants-appellees. We find it unnecessary to list all of the points urged except those which, in substance, are as follows:
That Act 161 of 1934 as amended by Act 14 of the Fourth Extraordinary Session of 1935, did not provide for redemption of property adjudicated after the passage of Act 161 of 1934; that the act expressly authorized redemption of property adjudicated prior to its passage. It is contended that the purported redemption by Mutual in 1936 of property adjudicated to the State on December 29, 1934, was therefore not authorized by the act as amended, and hence was an absolute nullity, citing Carruth v. Hollister, 198 La. 212, 3 So.2d 592 (1941); and State [ex rel. Lazarus] v. Grace, 188 La. 129, 175 So. 825 (1937).
We will limit our consideration to the questions of law which these contentions present.
The title of Act 161 of 1934 reads as follows :
“Authorizing any owner or other person interested personally or as heir, legatee, creditor or otherwise, except a judgment creditor of the owner, in any lots or lands bid in for and adjudicated to the State, or any of its political subdivisions, prior to the passage of this Act, to redeem such adjudicated property from the State, or any of its political subdivisions, from the date of the passage of this Act, and up to and including September 30th, 1935, upon the payment in five equal annual installments of the amount of the actual taxes for which said lots or lands were adjudicated to the State, or any of its political subdivisions.” (Emphasis added.)
In pertinent part section 1 of the act reads as follows:
“Be it enacted by the Legislature of Louisiana, That from the date this Act takes effect, and up to and including September 30th, 1935, if the owner or any person interested personally or as heir, legatee, creditor or otherwise, except a judgment creditor of the owner in any lots or lands bid in for and adjudicated to the State, or any of its political subdivisions, except in the parish of Orleans as to tax adjudications made to the City of New Orleans, prior to the passage of this Act, as long as the title thereto is in the State, or in any of its political subdivisions, * * * or if not heretofore contracted to be sold by the State or such subdivisions, shall contract to pay to the Treasurer of the State, or the proper authority of such political subdivision, in the manner hereinafter provided, the amount of the actual taxes for which said lots or lands were adjudicated to the State, or to any of its political subdivi *218 sions, except in the parish of Orleans as to tax adjudications made to the City of New Orleans. * * * ” (Emphasis added.)
The title of Act 14 of the Fourth Extraordinary Session of 1935 begins with the words, “An Act to amend and re-enact the title and Section 1 of Act No. 161 of the Regular Session of 1934, entitled * * Then follows the title of Act 161 of 1934. The title then concludes with the words, “ * * * so as to extend the provisions of said act to twelve o’clock noon of the twentieth day after the regular session of the Legislature of 1936 shall have adjourned.” Obviously, from a reading of the title it would appear that it was the intent of the Legislature merely to extend the terminal date of Act 161 of 1934 from September 30, 1935, to the date on which a new act, if passed in 1936, would take effect. Section 1 of the act amends the title accordingly with no other change.
We observe, however, that the amendment and reenactment of section 1 of the 1934 act is at variance from the title and section 1 of the original act in that it omits the phrase "prior to the passage of this Act.” It is also at variance from section 1 of the original act in that it omits the exception of the Parish of Orleans. In all other respects it is identical.
The certificate of redemption by which Mutual purported to redeem a large plot of land, including the lots previously sold to Mrs. Brown, was specifically issued under Act 161 of 1934, as amended. The State retained the tax lien and mortgage provided by that act as security for the installment payments extending over five years. This certificate is dated May 30, 1936.
There is no indication in the title that the omission of the phrase, “prior to the passage of this Act,” was intentional; and it might be argued that it was an inadvertent error, rather than an intent of the Legislature to broaden the scope of the act. However, this question is answered in unequivocal language by our Supreme Court in Carruth v. Hollister, supra.
In Carruth the Supreme Court had before it the identical question posed here. Property had been adjudicated for nonpayment of 1933 taxes. The adjudication on February 4, 1935, was after the passage of Act 161 of 1934. Thereafter on May 22, 1936, an heir of the then deceased delinquent tax debtor availed himself of the provisions of “Act 161 of 1934 as amended by Act 14 of the Fourth Extraordinary Session of 1935” and redeemed the property on the installment payment basis of five years as provided by the act. The third installment was not paid ánd the property was again sold under the provisions of the act to satisfy the State’s lien and mortgage. The purchaser, Carruth, thereafter brought suit to have his tax title confirmed and to gain possession of the property which was still possessed by the heirs of the delinquent tax debtor.
The Supreme Court, in affirming a judgment sustaining exceptions of no cause and no right of action, said at 593-594 of 3 So. 2d:
“Therefore, there can be no doubt that these two statutes, by their express terms, limit their application to lands bid in for taxes and adjudicated to the State or its subdivisions prior to the passage of Act 161 of the Regular Session of 1934. It cannot be said that in passing Act 14 of the Fourth Extraordinary Session of 1935, the Legislature intended to cover any other lands, adjudicated to the State or its subdivisions for taxes, because it is stated in the title of that Act that its purpose is ‘ * * * to extend the provisions of the said act [161 of 1934] to twelve o’clock noon of the twentieth day after the regular session of the Legislature of 1936 shall have adjourned.’ (Brackets ours.) Again, in Section 1 of the amending and re-enacting statute reference is made to the fact that the legislators intended the amending statute to *219 cover lands bid in for taxes and adjudicated to the State or its subdivisions prior to the passage of Act 161 of 1934.
“In the case of Brock, Com’r v. Lamarca, et ux., La.App., First Circuit, 1 So.2d 436, and in State ex rel. [Lazarus] v. Grace, 188 La. 129, 175 So. 825, the Court commented on the fact that Act 14 of the Fourth Extraordinary Session of 1935 merely extended the benefits of the provisions of Act 161 of the Regular Session of 1934 until the 20th day after the Regular Session of the Legislature of 1936 had adjourned.
“The members of the Legislature themselves took cognizance of this situation because in passing a similar redemptive statute, Act 47 of 1938, they expressly stated in the title and Section 1 of the Act that its provisions covered lands bid in and adjudicated to the State or any of its political subdivisions ‘for nonpayment of the 1936 taxes or the previous years’ taxes.’ ”
In the instant case, plaintiff is in the same position as Carruth. It acquired its purported title by nonwarranty deed from York Realty Company, the adjudicatee of the foreclosure on October 25, 1944. This adjudication was without legal effect.
Plaintiff now pleads LSA-R.S. 41:1326 (Act 256 of 1940), which reads as follows:
“All certificates of redemption of property issued by the State Land Office under Acts 1934, No. 161; Acts 1935, Fourth Ex. Sess., No. 14; Acts 1936, No. 183; Acts 1938, No. 47, and the cancellation of taxes made by authority thereof, are ratified, validated and confirmed unless attacked within six months from July 31, 1940.”
Upon this authority plaintiff argues that any infirmity which might have existed in the tax title of its vendor has been cured by failure of the adverse claimants to attack it within the time specified in the act. This question was not considered in Carruth v. Hollister, supra, probably because that suit predated the act of 1940. The Supreme Court did, however, make reference to this act in Johnston v. Nanney, 244 La. 959, 155 So.2d 196, 199 (1963), and said:
“Moreover, whatever infirmity may be attributed to the redemption certificate because of the aforementioned error was cured by the Legislature of 1940 when it enacted Act 256 which specifically ratified, validated, and confirmed such a certificate which became unassailable upon the expiration of the six months period provided by the Act for attacking it. * * *»
The infirmity involved in Johnston v. Nanney resulted from an error in reference to the tax year for which redemption was made. The Supreme Court did not consider that error to be a fatal defect. That is quite different from the situation here because the tax title acquired by York Realty Company, plaintiff’s vendor, is an absolute nullity, having been acquired through a chain of events which the Supreme Court specifically held in Carruth v. Hollister, supra, to be “without legal effect.”
We concede error in our original opinion and decree which recognized the validity of the tax deed by which York Realty Company purported to acquire title to the lots. We now hold the purported tax sale of October 23, 1944, to York Realty Company to be without legal effect, and therefore plaintiff’s claim of title to the lots in question is wholly without legal basis. It is a well-established principle of law that peremption cannot operate to validate a sale which is an absolute nullity, nor prescription to bar the right to attack such a sale. Succession of Webre, 247 La. 461, 172 So.2d 285 (1965); Condon v. McCormick, 134 So.2d 619 (La.App. 3d Cir. 1961); Union Producing Company v. Schneider, 131 So.2d 133 (La.App. 2d Cir. 1961); Atkins v. Simpson, 28 So.2d 769 (La.App. 1st Cir. 1947).
*220 Under the authority of Carruth v. Hollister, supra, the plaintiff, Lake, Inc., had no right or cause of action and its petition should have been, dismissed.
Having arrived at this conclusion it is not necessary to discuss any other points raised by the application for rehearing. Nor is it necessary to discuss the validity of the tax redemption of Mrs. Brown on April 27, 1937, which counsel for the Brown heirs argues is controlled by the authority of Johnston v. Nanney, supra. Defendants have not sought confirmation and their title is not under attack. The only issue in this case is the confirmation of the purported tax title through which plaintiff asserts ownership. Plaintiff has no cause or right of action for the reasons stated above, and the dismissal of its petition with prejudice was proper.
Our original decree is recalled and set aside and the judgment appeal from dismissing plaintiff’s suit with prejudice and ordering that the tax sale by the State of Louisiana to York Realty Company on October 23, 1944, registered in C. O. B. 206, folio 629, and the subsequent transfer by York Realty Company to plaintiff, Lake, Inc., by act of sale dated July 18, 1966, registered in C. O. B. 640, folio 959, insofar as said transfers apply to the following described property, be, and the same are, declared nullities, and defendant Lake, Inc., is enjoined and prohibited from setting up or claiming any right, title, or interest in and to the following described property, to-wit:
A certain tract or portion of ground together with all the rights, ways, privileges, servitudes, ■ or appurtenances, thereunto belonging or in any wise appertaining, known as Lots Nos. 15, 16, 17 and 18, in Block 4, Clearview Estates, Section “B”, located in Sec. 44, T. 12 S.R. 10E, Southeastern District of Louisiana, Parish of Jefferson, Louisiana, said Clearview Estates being formerly a part of Pontchartrain Gardens, Section A, formerly the property of the West Orleans Beach Corp., Inc.
Said Block 4 is bounded on the north by Zenith Street (measuring 50' in width); on the east by drainage reservation or part street on the west of and along the east boundary of Clearview Estates, which reservation measures 10' in width; on the south by West Napoleon Avenue (measuring 150' in width); and on the west by Woodlawn Avenue; and more particularly described in accordance with plan of Clearview Estates, Section “B”, by F. B. Grevemberg, Civil Engineer, dated January 30, 1930, recorded in Plat Book Volume 12, folio 7, Conveyance Office, Parish of Jefferson, State of Louisiana,
is now affirmed at appellants’ cost.
Affirmed.