PROVO STY, J.
The relator was charged "■by affidavit before' the Second city criminal •court with having, in violation of Act 92, p. 134, of 1908, brought oysters into the city of New Orleans in sacks containing less than a half standard barrel, and with having sold said sacks, in said city in their same condition of deficiency. Relator filed a demurrer to the affidavit, and then a motion to quash, These pleas were overruled, and relator was convicted; and on appeal to the criminal district court, division A, the judgment was affirmed. The case is before this court on writ of review.
Said Act 92 of 1908 reads as follows:
“An act
“To amend Act No. 35 of 1894 entitled ‘An act to amend and re-enact section 3925 of the Revised Statutes of Louisiana, and to repeal Act No. 98 of 1S8S entitled “An act to amend and re-enact section 3925 of the Revised Statutes of the State of Louisiana,” approved July 12, 1888,’ by making provision for a standard measure for oysters arriving in sacks at tire di erent ports and cities in the state of Louisiana of more than 50,000 inhabitants, and for the inspection of such oj'sters and the fees for such inspection.
“Section 1. Be it enacted by the General Assembly of the state of Louisiana, that section 3925 of the Revised Statutes be and the same is hereby amended and re-enacted so as to read as follows:
“There shall be in this state a dry measure .to be known under the name of barrel which shall, except for the purchase and sale of oysters contain three and one-quarter bushels according to the American standard, and shall be divided into half and quarter barrels. But for the sale of oj’sters baskets shall be used which shall contain one-halt of the standard barrel, which standard barrel contains three and one-quarter bushels according to this section, said basket to be stamped according to law, provided that all oysters arriving in sacks at any port or city in the state of Louisiana of more than fifty thousand inhabitants, from any other port, city or place within or without the state of Louisiana shall be inspected by the inspector of weights and measures for the respective districts or parishes where said oysters arrive if there be any such inspector at said port or city, and in the parish of Orleans by the inspector of the district where said oysters are unloaded, and each sack must contain one-half of-the standard barrel mentioned in this section, and after inspection, if found correct, shall be stamped by such inspector, for which inspection and the stamping the inspector making the inspection shall .be entitled to charge and collect from the buyers of said oysters a fee of one-quarter of one cent per sack, payable immediately after such inspection and stamping, and the inspector *417 shall issue a certificate of inspection which shall be ‘prima facie’ evidence of such inspection and of the correct measurements of the oysters arriving in sacks in accordance with the provisions of this act.
“Sec. 2. Be it further enacted, etc., that any buyer or seller importer or exporter of oysters in sacks or any other person guilty of violating any of the provisions of this act shall be deemed guilty of a misdemeanor and shall be punishable by fine not exceeding twenty-five dollars or imprisonment not exceeding thirty days or both at the discretion of the court having jurisdiction.
“Sec. 3. Be it further enacted, etc., that the respective inspectors of weights and measures throughout the state now or hereafter appointed or elected in accordance with law shall have the power to appoint or employ one or more assistants at their own cost and expense, such assistants to be vested with the same powers and subject to the same obligations as the inspectors themselves, provided said inspectors shall be responsible for the acts of their assistants in the performance of their public duties.
“Sec. 4. Be it further enacted, etc., that Act No. 98 of 1888, entitled ‘An act to amend and re-enact section 3925 of the Revised Statutes of the state of Louisiana,’ approved July 12, 1888, and all laws or parts of laws in conflict or inconsistent herewith, be and the same are hereby repealed.”
The relator assails the validity of this act in point both of form and of substance. It is null, he says, in that it purports to amend a statute which had been repealed, and was therefore nonexistent, and, as such, insusceptible of amendment; and it is unconstitutional in point of form, he says, in that, first, it creates a crime without having expressed in its title the purpose of so doing ; second, it has several objects; third, it seeks to amend Act 35, p. 38, of 1894 by mere reference to its title; fourth, it is a special and local law, and yet no notice of the intention to apply for its passage was published. The act, he says, is unconstitutional in point of substance, in that, first, it fixes a standard of measures different from that which has been fixed by Congress; and, second, it deprives him of his right to the equal protection of the law's and of his right to liberty and the pursuit of happiness.
The prosecution does not deny that a statute purporting to amend a repealed statute— that is to say, which undertakes to do an impossible thing, to amend something that does not exist — is null, but denies that Act 35 of 1894, which this statute purports. to amend, was ever repealed.
There can be no serious question but that, in so far as Act 35 of 1894 has reference to oysters, it was repealed by Act 153, p. 274, of 1902. Exactly and precisely the same ground that is covered by it, in so far as having reference to oysters, is covered by section 17 of said Act 153 of 1902; and the latter act contains a repealing clause which repeals all laws on the same subject-matter. In so far, however, as not having reference to oysters, Act 35 was not repealed, but remained a perfectly valid statute and could be amended.
The title of our Act 92 expresses the intention of amending it “by making provision for a standard measure for oysters arriving in sacks.” It does not express the intention of amending it in any other particular. It does not express the intention of amending it by making provision for a standard measure for the buying and selling of oysters. Those provisions, therefore, in the body of the act, which relate to a standard measure for the buying and selling of oysters, do not respond to anything expressed in the title of the act, and are, for that reason, null and void, and as if not written.
This, however, does not necessarily entail the nullity of the provision for a standard measure for oysters arriving in sacks. The rule is that a statute may be valid in part and invalid iu part, and that the invalid part may be disregarded altogether, and the other part constitute a valid statute, if the two parts are not so intimately connected as to raise a presumption that the Legislature w'ould not have enacted the one without the other. 26 A. & E. E. 595.
In the present instance the part which *419 corresponds with the title and which it is claimed is valid was intended to be an amendment to the invalid part. It figures in the act as a proviso to it. The Legislature lost sight of the fact that Act 35 of 1894 had been repealed, in so far as having reference to oysters, and sought to amend it in that respect — sought to amend the repealed part of said act. The amendment was not intended to be an independent piece of legislation, but merely supplementary, or ancillary, to that supposedly already existing. By this supposedly existing legislation, oysters, when bought and sold, were required to be measured in baskets, and the idea was to amend this by adding that oysters arriving in sacks - might be sold in the sacks, but that the sacks should have to contain the same measure as the baskets. Such, upon careful reading, will be found to have been the idea, however inartistically expressed. Now, it is not probable tlíat the Legislature would have enacted this supplementary legislation, if it had not mistakenly supposed that the legislation intended to he supplemented was in existence. The end sought to be subserved by this legislation, as a whole, was to protect the buyers of oysters against fraud and deception. This end would in no wise be subserved by maintaining the so-called valid part of the statute without the invalid part, because, in the absence of any law prescribing a standard measure for the buying and selling of oysters, this so-called valid part would operate, not as a law hearing upon the buying and selling of oysters, but exclusively upon the importation of oysters. It would require the sacks to contain a certain measure when imported, but would leave them free to contain any other measure when bought and sold. It would deal with the oysters as imports, and not as commodities upon the market. In other words, the statute would be made to 'operate in a way entirely different from the one which the Legislature had in view. Our conclusion is that Act 92 of 1908 is null in its entirety.
There was at the time of the adoption of this Act 92 of 1908, and there is to-day, no law establishing a standard measure for the buying and selling of oysters. Act 153 of 1902, which repealed Act 35 of 1894, in so far as having reference to oysters, was itself expressly repealed by Act 52, p. 113, of 1904, and the latter act made no provision for a standard measure for the buying and selling of oysters. We might mention here that Act 63, p. 88, of 1902, re-enacting Act 35 of 1894, was repealed, in so far as having reference to oysters, by Act 153 of 1902, in the same way precisely, and for the same reason, as was Act 35 of 1894. Act 153 was a later law than Act 63, and it repealed all laws on the same subject-matter.
It is therefore ordered, adjudged, and decreed that the judgments appealed from be set aside, and that the relator be released without day, or, if under bond, that his bond be canceled.
See dissenting opinion of BREAUX, O. J., 50 South. 441.