TUCKER, Judge.
Plaintiff, Ann Walls Constant, individually and as the natural tutrix of her minor children, Stacey D’Laine Constant, Douglas John Constant, Jr., and Elizabeth Annette Constant, brought suit against the State of Louisiana, under the provisions of House Bill No. 1511 (Act No. 657) of the 1968 regular session of the State of Louisiana Legislature. The action is brought by virtue of La.R.S. 29:141-144. Section 141 provides:
“Every member of the Louisiana state guard who is accidentally injured, or his dependents if he is accidentally killed, while on active duty in the service of the state or while attending any drill or formation to which he is ordered by competent authority or while going to or returning from this duty, drill, or other formation, shall be compensated by the state.
No compensation shall be paid unless the injury or death arose out of and in the course of the service.”
Act 657 of 1968 also states:
“The Nineteenth Judicial District Court shall render judgment in favor of plaintiff if it shall determine that Specialist 5 Douglas John Constant was accidentally injured and thereafter died as a result of said injuries, during the period of time while he was on active duty as a member of the Guard; and, either in attendance at a drill or formation to which he was ordered by competent authority, or while going to and/or returning from such duty, drill or other formation.”
Therefore, it is clear that the sole issue to be tried in the trial court was whether or not Constant was in attendance at a drill or formation or enroute to or from same under order by competent authority.
This suit is for damages because of the death of the husband and father of the plaintiffs, Douglas John Constant, who was injured in an accident on November 5, 1966, on the premises of the Old Chennault Air Force Base and who died as a result of such injuries five days later.
It is the position of the plaintiffs that Constant had been attending a two day *455 make-up drill as a member of the Louisiana National Guard on November 5 and 6, 1966. The record does establish that he reported to duty and\ commenced duty in proper uniform at approximately 1:00 p. m. on November 5, 1966.
The record also establishes that he left the area driving a military jeep in a motor pool and drove to his home where he had lunch with his wife.
The record also establishes that he left his home and then went to Caltec, located on the Chennault Air Force Base where he was employed and where he checked on pottery which his class for retarded children had made and which was baking in a school kiln. After leaving Caltec, the accident occurred en route back to the armory some 40 to 45 minutes after leaving his home.
It is the plaintiffs’ contention that Constant’s death arose out of and in the course of his service with the Louisiana National Guard in accordance with the provisions of the special act of the Legislature.
The State of Louisiana contends and makes a primary issue of the allegation that Constant was not on active duty in the service of the Louisiana National Guard at the time of his injuries and that he was, in fact, A.W.O.L. (absent without leave). The State also contends that, therefore, his death did not arise out of and in the course of his service with the Louisiana National Guard under the provisions of La.R.S. 29:141-144, and therefore his dependents are not entitled to recovery.
The trial court found that Constant’s dependents were entitled to the benefits of La.R.S. 29:141-144, and awarded compensation in the amount of $30,000.00 for Mrs. Constant and $10,000.00 for each of the children. The court did not allow medical and funeral expenses. The court allowed interest from date of judicial demand until paid, together with stenographic fees and any other court costs allowed by law.
No rehearing was requested and this appeal is taken by the State of Louisiana.
The appeal was answered by requesting an increase in the principal awarded each of the plaintiffs, interest from date of death instead of judicial demand, and that the state be condemned to pay all court costs.
The State specifies seven errors of the trial court, as follows :
“1. The trial court erroneously ruled that the record is bare of any suggestion that Specialist 5 Constant was negligent.
2. The court erred in finding that Specialist 5 Constant was not under the influence of alcohol at the time of the accident.
3. The court erred in finding that Specialist 5 Constant had another continuing duty concerning the operation and maintenance relating to the jeep he was driving at the time of his injuries.
4. The court erred in concluding that Constant could have been on a “break time” during the time of the accident.
5. The trial court erred in concluding that the injuries and death arose out of and in the course of Constant’s service in the National Guard.
6. The court erred as a matter of fact that Specialist 5 Constant was 25 years old at the time of his death.
7. The court erred in overruling an objection to hearsay evidence and in allowing Trooper Rozas to give hearsay testimony.”
It should be noted here that some months after the filing of the pretrial order the State by a supplemental and amending answer, raised a question as to the constitutionality of Act 657 of 1968. However, in a remarkable display of adversary cooperation the issue was by-passed in the course of the trial and never argued seriously in brief.
*456 The trial court referred to it, in passing, in its written reasons for judgment but then went on to say, “As will be shown hereafter, determination of constitutionality is not needed for a decision in this case.” The trial court did not mention the issue again.
The State contended that the special act was unconstitutional in the following respects :
A. It is a special and local law concerning a civil action and seeking to regulate the trial of a particular law suit.
B. The Body of Act 657 is broader than its title.
C. Act 657 embraces more than one object.
D. The object of the act is not stated in the title.
E. Act 657 goes beyond the provisions of Article 3, Section 35 of the Louisiana Constitution which provisions authorize the Legislature only to waive State’s immunity from suit, immunity from liability, and also prescription or peremption.
F. Act 657 violates the provisions of Article 4, Section 12.
The sum and substance of the constitutional objection is that the Legislative authority included a waiver of the State’s rights to claim contributory negligence, provides for interest rates from date of death and provides that if the state is cast for judgment that it pay all court costs, all of which it is averred goes beyond the provisions of Article 3, Section 35 of the Louisiana Constitution which, it is contended, only authorizes the Legislature to waive the State’s immunity from suit, immunity from liability, and also prescription or peremption.
The State is correct in its interpretation of Article 3, Section 35, of the Constitution of the State of Louisiana. However, the trial court avoided the issue entirely by finding that there was no contributory negligence on the part of Constant and ignoring the provisions of the special act in reference to interest and cost that go beyond the language of Article 3, Section 35 of the Constitution. The question is, therefore, does the presence of this language in the special act invalidate the whole act?
For some reason, special act 657 of 1968 was not included in the record in this case and apparently was not offered. However, it is a matter of public record and does contain a severability clause.
In addition, Louisiana jurisprudence clearly holds that a statute may be valid in the main and invalid in part if they can be separated. In Lloyd J. Cobb v. La. Board of Institutions, 237 La. 315, 111 So.2d 126, 130, the Supreme Court stated:
“We are also aware of the fact that a statute may be valid in part and invalid in part if the two parts are not so intimately connected as to raise a presumption that the legislature would not have enacted the one without the other. State v. Cognevich, 124 La. 414, 50 So. 439; 26 A. & E. Enc. 595; City of Alexandria v. Hall, 171 La. 595, 131 So. 722; Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49; Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223. If the unconstitutional portions of an act are so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention manifested by the legislature in passing the act, the entire act is void. Stewart v. Stanley, 199 La. 146, 5 So.2d 531; Ricks v. Close, 201 La. 242, 9 So.2d 534; Womack v. Varnado, 204 La. 1019, 16 So.2d 825.”
Therefore, the constitutional question is of no moment here. Mr. Justice Tate correctly stated in his dissent in the same case, “A fundamental rule of statutory construction is that a statute will be sustained when a constitutional construe *457 tion can be given it as against an unconstitutional construction urged.”
The issues by the court are, therefore, restricted in the specifications of errors raised by the appellant.
All of these are averments of error in finding of fact.
This court must find that the trial court was manifestly wrong in its conclusion of fact.
The facts are that the classes Constant was attending were being conducted by Company A, Third Battalion, 156th Infantry. Constant belonged to a medical platoon in the Headquarters Company, Third Battalion, 156th Infantry. The drill classes were being conducted on a Saturday afternoon at the armory located eight or nine blocks from downtown Lake Charles. The accident happened at Chennault Air Force Base, about three miles from the armory where military vehicles were kept.
There is no evidence to show that Constant was either ordered or had any duty to perform maintenance in driving or even having possession of the jeep that he was driving at the time of the fatal accident.
On the other hand, there was considerable testimony to the effect that it was customary for guardsmen to drive vehicles on a weekly three mile maintenance run to charge batteries and to keep the vehicles in general working condition. However, in these events it was the regulation to enter such information in a logbook as to each use of the vehicle.
The decedent was attached to Headquarters Company. Its Commanding Officer, Captain Wildredge P. Ducet, testified he was not present at the armory on the Saturday afternoon in question. He had, however, issued orders to Constant to make up a drill which Constant had missed on October 9th, preceding. On Saturday afternoon, November 5, 1966, Constant did report to the Armory where Company A was holding instructions in drill classes.
Ducet testified specifically that Constant was assigned to the Medical Platoon attached to the Battalion Aid Station and was not a member of Company A. He also stated that a guardsman of Constant’s rank and assignment would never be assigned to wash or maintain a jeep and that such functions were normally performed by persons of lower rank. He also stated that each vehicle was assigned a driver who is tested and issued an Army driver’s license and that Constant had never been assigned a vehicle.
Ducet also testified that he had never ordered Constant to maintain and drive a vehicle and that Constant had no authority on this occasion or any other occasion.
Ducet testified that the vehicle in question belonged to Headquarters Company and that its logbook and dispatch sheet were locked in the Headquarters Company office when the vehicle was taken.
Ducet stated that the logbook indicated that no one in Company A was authorized to order use of the vehicle because the vehicle was not assigned to Company A. He further stated that the three mile maintenance run was run over a prescribed course which did not include Chennault Air Force Base grounds where the accident occurred. He also stated that these maintenance runs were generally conducted on a Sunday afternoon, after the noon meal.
The Company Commander of Company A, Captain Robert C. McCall, testified that Constant did appear in his office at about 1:30 p. m. and requested to attend the drills but did not have written authorization from his Company Commander. McCall stated that he would permit Constant to attend the drill subject to submission of proof of authorization, but that he could not certify the attendance until such authority was provided. He said that decedent left his office and he next saw him in the hospital after the accident. He testified specifically that he had given the decedent no permission or order to use the *458 jeep in question and could give him none because the jeep belonged to Headquarters Company and he had no authority to authorize its use.
So far as Captain McCall knew, no one else ordered or permitted the decedent to leave the drill to operate a jeep on a maintenance run. It was his opinion that the report of November 18th in the record showed no violation by Constant because the investigating officer gave the decedent the benefit of the doubt since, if decedent were absent without leave, he was after all, dead, and no disciplinary action could be taken against him. He conceded that an honorable discharge was granted decedent on November 14, 1966, four days before the line of duty determination was made by Ford.
Chief Warrant Officer, Charles H. Frier, the Staff Supply Assistant, and Company First Sergeant on the date of the accident testified that at about 1:25 p. m. Constant asked him about making up a drill. Since decedent had no written authorization from his Commanding Officer, Warrant Officer Frier could not grant the permission and referred Constant to McCall. He said he saw Constant go upstairs and enter the Company A orderly room. Constant came back down and told Frier he had permission to enter the drill. Frier then told Constant that if he remained throughout the drill he would certify his attendance. He led decedent through the door of the room where about 75 men were being instructed. He saw the decedent take a seat and never saw the decedent afterward. He testified that he did not give decedent permission or orders to use the jeep. He had no power to authorize use of a Headquarters’ vehicle.
In summary the record would reveal the following:
1.There is no information in the record that anyone in authority with whom decedent came in contact authorized his use of the vehicle.
2. There is no information in the record that indicated that any of the officers of Company A even had the authority to authorize the use of the vehicle in question.
3. There is no information in the record that decedent left the drill with any permission of any sort.
4. There is no information in the record that decedent signed a dispatch form or logbook before taking the vehicle as required.
5. Decedent’s rank and duties, as well as the custom of the unit, precluded his assignment to jeep maintenance duties or jeep use.
For the foregoing reasons we hold that the lower court was manifestly erroneous in its findings of fact, and the judgment below will be reversed at the costs of the plaintiff-appellee.
Judgment reversed.