315 So.2d 349 (1975)
Mrs. Doris T. MIMS
v.
WEST BATON ROUGE PARISH SCHOOL BOARD.
No. 10274.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
*350 Murphy W. Bell, Baton Rouge, for appellant.
C. H. Dameron, Port Allen, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
LANDRY, Judge.
Doris T. Mims (Appellant), a tenured teacher, appeals a judgment sustaining her dismissal, by the West Baton Rouge Parish School Board (Appellee), from the position of special education teacher, Devall Elementary School, upon charges of incompetence and willful neglect of duties, pursuant to LSA-R.S. 17:443. We affirm.
On June 2, 1971, Michael T. Misuraca, Principal, Devall Elementary School, who is white, instituted dismissal proceedings against Appellant, who is black, by proper written notice specifying the following charges of alleged incompetency and neglect of duties:
"1. Failure to follow the policy established for the Devall School faculty relating to reporting absences from school.
2. Failure to turn in to the office, reports and materials as requested in the classroom.
3. Failure to maintain discipline or a conducive learning environment in the classroom.
4. Failure on the part of the teacher to initiate suggested recommendations for improvement as presented by supervisors during conferences.
5. Failure to follow the established procedures relating to the maintenance of the student report card and cumulative card.
6. Failure to follow the policy established for the Devall School faculty regarding the daily reporting of the teacher lunch count.
7. Failure on the part of the teacher to report or pay for the exact number of days she actually ate in the lunchroom during the months of March, April, and May, 1971.
8. Failure to recognize the needs of the students she teaches and to group, plan, and teach according to those needs.
9. Failure to do the necessary planning and preparation required of an effective teacher.
10. Failure to exhibit the necessary effort, initiative, imagination, and enthusiasm required of an effective teacher.
11. Failure to display a positive attitude toward educable mentally retarded children.
12. Failure to emphasize the importance of individual responsibility in regard to the care of school property."
Pursuant to a resolution of the School Board, Appellant was served with notice on June 3, 1971, informing Appellant that a hearing had been set on the charges and would be held June 22, 1971. Appellant responded with a motion for a more definite statement or particularization of charges and requested additional time in which to prepare her defense. In addition, Appellant moved to quash the charges on the ground that LSA-R.S. 17:443 is unconstitutional on its face and as applied to Appellant because it requires segregation of the races, encourages discrimination by school authorities, and also because the School Board has allegedly long carried out acts of racial discrimination against black teachers and black students as a matter *351 of policy. Appellant also moved to quash the charges on the ground that Michael T. Misuraca is prejudiced against blacks and is incompetent to fairly evaluate the ability of black teachers, to the knowledge of Appellee.
The School Board granted Appellant a continuance to August 10, 1971. On July 23, 1971, Mr. Misuraca furnished the School Board a twelve page particularization of charges, a copy of which was sent to Appellant more than fifteen days prior to the scheduled hearing. At Appellant's request, an open hearing was held commencing August 10, 1971. At the outset, the School Board denied Appellant's motion to quash. At the hearing Appellant was represented by counsel, she was offered an opportunity to cross-examine the witnesses presented in substantiation of the charges and presented witnesses in her defense. On August 18, 1971, the School Board sustained the charges and ordered Appellant's dismissal.
In a well reasoned opinion, the trial court disposed of Appellant's contention of unconstitutionality of LSA-R.S. 17:443, in the following language which we adopt as our own:
R.S. 17:443 (before the 1972 amendment) reads as follows:
"Removal of teachers; procedure; right to appeal
A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system or any public institution of higher learning of the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with a copy of the written charges. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at the said hearing. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system of the state of Louisiana, and ordered removed from office, or disciplined by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board."
It is contended the words "or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system or any public institution of higher learning of the state of Louisiana" as a cause for *352 removal are unconstitutional and render the entire removal section unconstitutional. The offensive words were introduced into the teacher tenure law by amendment adopted by Act No. 249 of 1956. (They were removed by Act No. 329 of 1972.)
It is virtually conceded and rather obvious that the clause complained of is unconstitutional by natural extension of the ruling in Ludley v. Board of Supervisors of L.S.U., D.C., 150 F.Supp. 900, and 5 Cir., 252 F.2d 372.
The clause purports to provide an additional cause for dismissal. It is not the cause or a cause for which Mrs. Mims was dismissed, and to that extent is not relevant to these proceedings. The sole question is whether the presence of that clause vitiates the entire section of the teacher tenure law.
Section 2 of Act 249 of 1956 provides as follows:
"In case any part of this Act shall be held to be unconstitutional, this shall not have the effect of invalidating any part of it that is constitutional and the part or parts not affected by such ruling shall continue in full force and effect."
The presence of such a severability clause creates a presumption of severability. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477.
Unless the unconstitutional portions of the act are so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention manifested by the legislature in passing the act, the unconstitutionality of the severed clause cannot affect the rest of the statute. Cobb v. Louisiana Board of Institutions, 237 La. 315, 111 So.2d 126. Partial invalidity and severability are principles which will apply also to statutes which are penal in nature. See State v. Baggott, 212 La. 795, 33 So.2d 523; City of New Orleans v. White, 143 La. 487, 78 So. 745.
In the case of the statute in question, the severability of the clause is particularly evident since the statute was operable for years prior to 1956 and after 1972, without the offending clause. There is no essential interrelationship between the unconstitutional clause and the rest of the act. The clause is merely one additional cause for removal of a teacher among several such clauses. Deleting or adding a cause for dismissal to others in the act does not affect the operability of the law in any way with respect to the other causes for removalthey are disjunctive and alternative, not conjunctive. The severability clause indicates the intent of the legislature was that the law should remain in effect even if a portion of it cannot be enforced.
No attack is made herein on the procedure followed in this dismissal action pursuant to LSA-R.S. 17:443. We note, as did the trial court, that in this instance all procedural requirements were scrupulously observed. In an action of this nature, where all procedural safeguards are shown to have been fulfilled, judicial review is confined to a determination of whether the action of the dismissing authority is supported by substantial evidence of record and whether or not such action was either arbitrary, capricious or an abuse of discretion, Stewart v. East Baton Rouge School Board, La.App., 251 So.2d 487.
Appellant's duties consisted of teaching a class of approximately 15 mentally retarded children whose chronological ages differed substantially. The class consisted of approximately 11 blacks and four whites. One of Appellant's chief problems was inability to maintain control of the class and obtain and hold the attention of her students. While it is conceded that handling mentally retarded children is difficult, it is also shown that using proper procedures and techniques, order may be achieved and the attention of students held.
*353 Mr. Misuraca testified as to Appellant's numerous violations of rules set forth in an administrative handbook distributed to all teachers through the School Board, and the Devall School Teacher's Handbook. He also testified as to Appellant's repeated failure to put into practice oral instructions issued at regular faculty meetings. He attested to Appellant having left her class unattended; failing to timely report her absence due to illness; neglecting to obey instructions and rules regarding pupil registration cards, lesson previews, grade distribution sheets and drop-out cards; and, failing to maintain test papers in the classroom. He also testified as to Appellant's repeated and persistent failure to turn in a daily lunch count, including the times which Appellant herself ate lunch at the school cafeteria and failed to report and pay for her own meals.
Mr. Misuraca's evaluations were confirmed by the testimony of Harris J. Ducote, Supervisor of Child Welfare, Dr. James Lynn McDuffie, Associate Professor and Coordinator of Special Education, and Catherine D. Spitale, a "helping teacher" assigned to assist teachers of the 4th, 5th and 6th grades and teachers of special education classes (retarded children's classes). In essence, these parties testified that Appellant failed to maintain discipline in her classes by permitting children to roam the classroom at will and read aloud in competition to Appellant. Their testimony also shows that despite conferences with Appellant after observation of Appellant's class, Appellant declined to institute suggested procedures and policies intended to improve conduct and decorum in the class and to achieve and hold student interest. These same witnesses also testified that, based on observation of Appellant's class and teaching methods, they concluded Appellant failed to properly plan class lessons to accommodate the requirements of the various students by failing to recognize and provide for the difference in ages and learning abilities. These witnesses further deposed that Appellant failed to stress the importance of individual responsibility in the care and use of school property and that Appellant displayed a negative rather than positive attitude in the teaching and instruction of educable mentally retarded children.
In defense, Appellant offered the testimony of Dr. A. C. Blanks, Director of Special Education, Southern University, who explained that disciplinary problems are the rule in special education classes because of the inherent difficulty in holding the attention of such children. Dr. Blanks also explained that the disparity in ages of children in special education classes contributes greatly to the discipline problem.
Mr. A. R. Slaughter, Supervisor of Instruction, testified that in prior years, when it was his duty to annually evaluate Appellant, he never gave Appellant an unfavorable rating. His last evaluation, for the year 1971, was not based on actual class visitation but upon visitations between 1965 and 1970.
Mr. Felton C. Crockett, Jr., Assistant Principal, Devall Elementary School, stated that he frequently visited Appellant's classes and felt that Appellant was doing satisfactory work. He attributed Appellant's disciplinary problems to the disparity of student age and the advanced age of some of Appellant's pupils. He also stated he was not consulted by Mr. Misuraca prior to the bringing of charges against Appellant.
The record is totally barren of evidence in substantiation of Appellant's charge that Misuraca is prejudiced against blacks and is incompetent to evaluate the ability and competence of black teachers. On the contrary, it is shown that Misuraca is an experienced administrator and that his action in bringing charges against Appellant was prompted by good cause, not bias or prejudice.
Our review of the record convinces us there is no foundation for holding that the action of the School Board was arbitrary, *354 capricious or an abuse of the Board's discretion in this instance.
On appeal, Appellant urges for the first time that LSA-R.S. 17:443 is unconstitutional because it is broad, vague and void of "standards of guidelines upon which a finding of negligence or incompetence can be based", and that the statute "allows such a broad and unrestrained discretion that the decision to discharge or not (sic) is unfettered creating a situation that is pregnant with discrimination." This ground of alleged unconstitutionality was not specified in the trial court and cannot be considered originally at the appellate level, Simon v. Jefferson Davis Parish School Board, La.App., 289 So.2d 511. See also Summerell v. Phillips, 258 La. 587, 247 So.2d 452.
The judgment of the trial court is affirmed at Appellant's cost.
Affirmed.